**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JAVARRO BELL,** | § | |
| Petitioner, | § | |
| | § | No. 3:04-CV-0492-P |
| v. | § | |
| | § | |
| **DOUGLAS DRETKE, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge follow:

**FINDINGS AND CONCLUSIONS**

**I.   NATURE OF THE CASE**

Javarro Bell filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**II.   PARTIES**

Javarro Bell ("Petitioner") is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"). Douglas Dretke ("Respondent") is the Director of the TDCJ-CID.

**Findings, Conclusions, and Recommendation**
**of the United States Magistrate Judge -Page 1**

### III.  PROCEDURAL BACKGROUND

A jury found Petitioner guilty of capital murder, and the trial court sentenced him to mandatory life in the custody of the TDCJ-CID.  *State v. Bell*, No. F-0071885-JU (291st Crim. Dist. Ct., Dallas County, Tex. Dec. 12, 2000).  The state appellate court affirmed Petitioner's conviction.  *Bell v. State*, No. 05-01-00143-CR, 2002 WL 318310 at *4 (Tex. App.–Dallas March 1, 2002, pet. ref'd)(unpublished); *Ex parte Bell*, at 94-96 (appellate opinion).  The Texas Court of Criminal Appeals refused his petition for discretionary review ("PDR") on May 29, 2002.  *Bell v. State*, PDR No. 530-02.

On February 24, 2003, Petitioner filed an application for a state writ of habeas corpus which the Texas Court of Criminal Appeals denied without written order.  *Ex parte Bell*, No. 56,880-01 at cover (Tex. Crim. App. Dec. 17, 2003).  Petitioner then filed his federal writ of habeas corpus on March 9, 2004.

Petitioner makes the following claims:

1. He was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution;

2. The trial court reversibly erred when it failed to suppress the unduly suggestive photo lineup of Petitioner in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

3. Petitioner was denied a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution because, in light of newly discovered evidence, Petitioner is actually innocent;

4. The prosecutor engaged in prosecutorial misconduct by eliciting perjured testimony;

5. The trial court reversibly erred when it failed to instruct the jury on Thomas Cayson as an accomplice witness;

**Findings, Conclusions, and Recommendation**
**of the United States Magistrate Judge -Page 2**

6. Petitioner was denied effective assistance of appellate counsel; and

7. The evidence is factually insufficient to prove Petitioner committed the offense of capital murder.

## IV. **FACTUAL BACKGROUND**

The state appellate court adduced the following facts:

Anthony Perry, the victim, drove to Dallas from Peoria, Illinois with Thomas Cayson so they could both buy marijuana. Jeffrey Scott, a mutual friend, told them he knew a dealer in Dallas who would sell them marijuana for $300 per pound, half the price Perry paid his regular source in San Antonio. Perry brought $20,000 cash, intending to purchase 100 pounds. Cayson testified that Perry promised him ten pounds of marijuana for helping him make the deal. Cayson brought $1,500 to buy marijuana for himself.

When they arrived in Dallas, Scott told them that although his connection now could not sell the marijuana for the agreed price, he had a lead on another dealer who might. Perry and Cayson checked into room 105 of a motel. That evening they met James Alexander smoking marijuana in the parking lot of the motel. The group talked and shared Alexander's marijuana. Perry and Cayson returned to their room, and Alexander went to room 107 of the motel. Neither Perry nor Cayson knew Alexander before this chance meeting. The next morning, Cayson and Perry once again ran into Alexander smoking marijuana in the parking lot. Later, Perry told Cayson that he had arranged to buy seventy pounds of marijuana from Alexander for $20,000 instead of waiting on Scott's connection.

Apparently Alexander originally planned to sell the marijuana as agreed and gave Perry and Cayson his pager number. But when he could not obtain the promised quantity, he decided instead to rob the Illinois dealers. He recruited [Petitioner], a childhood friend, to help with the robbery. He gave [Petitioner] a nine millimeter handgun and armed himself with a nine millimeter submachine gun. He arranged for Keiundrick "KeeKee" Vaughn to drive the getaway car. They filled several duffel bags with junk from the trunk of [Petitioner's] car and put fifteen pounds of marijuana into one duffel bag to deceive the buyers.

Alexander called Perry in response to Perry's page. Perry instructed him to bring a sample of the marijuana to room 105. Alexander, [Petitioner], and Vaughn drove to the motel, and Alexander went to the door alone. He told Perry he wanted to see if the deal was "for real." Perry got the money out of the microwave, and Alexander counted it. Alexander returned to the car, and he and [Petitioner] carried the trash-filled bags into the motel room. After a few minutes

**Findings, Conclusions, and Recommendation**
**of the United States Magistrate Judge -Page 3**

of conversation, [Petitioner] and Alexander pulled guns from a duffel bag, and [Petitioner] started shooting. [Petitioner] ordered Cayson on the floor just as he fired a bullet that went past Cayson's head. A second bullet struck Perry in the head, killing him.

[Petitioner] and Alexander began yelling, "Where's the money?" Cayson answered, "You know where the money [is] at. It's in the microwave." But the money was not there. [Petitioner] and Alexander told Cayson he would die unless he told them where the money was. Cayson then directed them to his $1,500 wrapped in a plastic bag under the mattress. The robbers fled the room and drove to the home of [Petitioner's] girlfriend where they counted the money. Only then did they discover they had taken $1,500 rather than the $20,000 intended.

After the robbers left, Cayson found Perry's $20,000 bag of money lying on the floor by the corner of the bed. Cayson took the money, ran to the motel office, and told the clerk to call the police because there was a dead man in room 105. He drove to Scott's house and told him what had happened. He then returned to the motel, wiped the room clean of fingerprints, got his clothes, wiped the fingerprints from Perry's rental car, and paid Scott $2,000 to drive him to Peoria. In Peoria, Cayson reported the murder to Detective Grow of the Peoria Police Department. He gave Grow Alexander's pager number and told him that Alexander had been staying two doors away at the motel. Grow relayed this information to the Dallas police, and Dallas detective Devon Davis went to Peoria with a six-person photographic lineup that contained Alexander's photograph. Cayson positively identified Alexander as the man who was to sell them the marijuana, but he also told Grow that Alexander was not the man who shot Perry. In the months that followed, Cayson was shown several photographic lineups containing photographs of persons thought to be associates of Alexander. Fifteen months after the murder, Cayson identified [Petitioner] out of one of those photographic lineups. Cayson admitted that he never returned any of Perry's $20,000 to Perry's family. He admitted that he first explained his escape by claiming that the killer's gun jammed. He also admitted that he continued to sell drugs after he received probation in Georgia.

Alexander spent a year in jail awaiting trial for capital murder, all the while claiming to have been with his mother at the time of the offense. But one week before his trial, Alexander gave a statement in which he identified [Petitioner] as the shooter and Vaughn as the getaway driver. The police recovered Vaughn's fingerprints from a radio found in one of the duffel bags left in the motel room by the robbers. At trial, Alexander admitted he had been convicted of cocaine possession. He also admitted that he was cooperating, because "[m]y lawyer told me it would be best for me to testify."

**Findings, Conclusions, and Recommendation**
**of the United States Magistrate Judge -Page 4**

*Bell v. State*, slip op. at * 1-2.

## V.     STANDARD OF REVIEW

**1.     The Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), 28 U.S.C. § 2254.**

Under the AEDPA:

(d)     An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

 (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Additionally, under 28 U.S.C. § 2254(d), a presumption of correctness must be accorded

**Findings, Conclusions, and Recommendation
of the United States Magistrate Judge -Page 5**

findings of fact made by a state habeas court if supported by the record. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citation omitted). The petition in this case is subject to review under the AEDPA.

**2.      Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel a petitioner must show that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

## VI. ANALYSIS

### 1. Ineffective Assistance of Trial Counsel

#### (a.) Failure to Interview Witnesses

Petitioner alleges that trial counsel was ineffective for failing to interview witnesses James Alexander, Thomas Cayson, Jeffery Scott, Keiundrick Vaughn, and the motel manager. Conclusory statements without more are not sufficient. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings); *see also, Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) ("for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."); *see also Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ"). All of Petitioner's allegations of counsel's failure to interview witnesses are conclusory and unsupported.

Moreover, during the state writ proceeding, counsel for the Petitioner attested that he interviewed all the relevant witnesses before the trial. *Ex parte Bell,* at 103 (affidavit of George Ashford). Counsel further attested that he thoroughly investigated the case and any possible defense to the charge. *Id.* Counsel's investigation was complete. Petitioner failed to show that any further investigation would have changed the outcome of the trial.

#### (b.) Accomplice Witness Allegations

Petitioner's next allegations are that: (a) counsel failed to object to Thomas Cayson's testimony as an accomplice witness and (b) counsel failed to request a witness accomplice jury instruction. Under Texas law, a conviction may not be sustained based upon the testimony of an

**Findings, Conclusions, and Recommendation**
**of the United States Magistrate Judge -Page 7**

accomplice unless it is corroborated by other testimony which tends to connect the defendant with the offense. TEX. CODE CRIM. PROC., art. 38.14. "An accomplice witness is someone who has participated with someone else before, during or after the commission of a crime." *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). To be an accomplice, the witness must be susceptible to prosecution *for the offense with which the accused is charged. Id.* at 439 [emphasis added].

In his affidavit supplied to the trial court on habeas corpus review, Petitioner's counsel refutes Petitioner's contentions. Counsel attests that "Thomas Cayson was not an accomplice-witness as a matter of law and, therefore, an objection to the trial court's failure to instruct the jury on this issue would have been overruled." *Ex parte Bell* at 103. Defense counsel is not required to file frivolous objections and motions on behalf of the client. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). In fact, counsel has a duty to bring to the court only objections and motions that are warranted by law or supported by a nonfrivolous argument. *Id*.

The facts in this case specifically show that Cayson was, in fact, a victim, rather than an accomplice in this matter. After Petitioner shot Perry in the head and killed him, Petitioner demanded to know where the money was hidden. Cayson, lying on the floor in fear for his own life, revealed the location of the money. Clearly, his revelation did not make him an accomplice to the shooting. Petitioner alleges that, Cayson was an accomplice witness due to the fact he was a participant in a drug deal. Cayson may have been an accomplice to a drug deal but not to the murder and robbery. The record contains no evidence that Cayson acted affirmatively to promote the commission of the murder either before, during, or after the offense. Therefore, Cayson was not an accomplice as a matter of law or fact. *Id.* at 438-41. The evidence does not

support an accomplice instruction, and if counsel had requested one, the trial court would not have given it. Counsel did not provide ineffective assistance by failing to object to Cayson's testimony or failing to request an accomplice witness jury instruction. The state court determinations in this regard are neither "contrary to" clearly established United States Supreme Court precedent or "an unreasonable determination" of the facts in light of the evidence. Petitioner's claims are without merit and should be denied.

### (c.) Claim that Trial Counsel Failed to Object to the Prosecutor's Knowing Use of Perjured Testimony

Petitioner contends that trial counsel provided ineffective assistance by failing to object to the prosecutor's knowing use of the perjured testimony. Petitioner merely cites to inconsistencies between the testimony of Sharon Alexander and the testimony of James Alexander. Contradictory testimony from witnesses does not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Petitioner makes the conclusory allegation that Counsel failed to subject the state's case to a meaningful adversarial testing. As the Court has previously stated, mere conclusory allegations do not raise constitutional issues in habeas corpus proceedings. *Ross*, 694 F.2d at 1012. Counsel attested on state habeas review that he attempted to point out discrepancies in James Alexander's testimony and asked him whether he had made any deals with the prosecution in exchange for his testimony. *Ex parte Bell* at 103. Additionally, the prosecutor denied Petitioner's allegation that he knowingly used perjured testimony. *See id.* at 97-98 (affidavit of Bill Wirskye). The trial court found on habeas corpus review that counsel was not deficient in any regard. *Ex parte Bell* at 99-102. The Court finds that Petitioner did not show that the state court proceedings resulted in a decision that was

contrary to *Strickland* or an unreasonable determination of the facts in light of the evidence. Petitioner did not prove that Counsel provided constitutionally ineffective assistance.

**2.    Claim that the Prosecutor Knowingly Used Perjured Testimony**

Petitioner alleges that the prosecution denied him a fair trial because the prosecutor knowingly used perjured testimony. Petitioner has the burden of showing that the false testimony was given, that it was material, that it would have affected the jury's verdict, and that the prosecution used it knowing that it was, in fact, false. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Creel v. Johnson*, 162 F.3d 285, 391 (5th Cir. 1998). Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports or in statements do not establish perjury. *Koch*, 907 F.2d at 531 (contradictory testimony from witnesses or inconsistencies in a witness's testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989) (the omission of certain facts from the reports and written statements of the prosecution's witnesses, alone, is not adequate to put the prosecution on notice of perjury on their part, much less establish such perjury in fact occurred); *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987) (inconsistencies between pre-trial and in-trial testimony do not, standing alone, establish perjury or put the prosecution on notice of possible perjury).

Petitioner fails to show that the prosecutor knowingly offered perjured testimony. The claims of perjured testimony are simply inconsistencies in the testimony which the jury had before it and could consider in making a determination as to guilt or innocence. The trial court considered this claim on habeas corpus review and found that Petitioner failed to substantiate

any allegations of prosecutorial misconduct. Petitioner failed to meet the "clearly contrary" or "unreasonable application" clauses of § 2254(d). This claim must be denied.

3.  **Actual Innocence**

Petitioner now alleges that he is actually innocent based upon newly-discovered evidence. He attaches an affidavit of an accomplice, James Alexander, recanting his trial testimony. *See Ex parte Bell*, at 84. However, claims of actual innocence do not state a basis for federal habeas corpus relief absent an independent constitutional violation. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Boyd v. Puckett*, 905 F.2d 895, 896-97 (5th Cir. 1990). An independent constitutional violation did not occur at trial in this case. Further, claims of innocence based on a trial witness's recantation of his or her testimony are inherently suspect. When a witness has testified, he has received the benefit of any bargain that he had with the state and has nothing to lose by recanting his testimony. Such "recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *Spence v. Johnson*, 80 F.3d 898, 1003 (5th Cir. 1996). This evidence is not new, reliable, exculpatory evidence. The state court denied Petitioner's actual innocence claim, and he has shown no grounds for granting federal habeas corpus relief.

4.  **Claim of Trial Court Error**

Petitioner claims that the trial court abused its discretion by failing to (1) suppress an unduly suggestive photographic lineup and (2) give a jury instruction on accomplice testimony. Respondent contends these claims are procedurally barred. Federal courts may not review a

**Findings, Conclusions, and Recommendation
of the United States Magistrate Judge -Page 11**

state court decision that rests on adequate and independent state procedural grounds, unless the habeas petitioner shows cause for the default and prejudice attributable to the default or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Harris v. Reed,* 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *Id.; Lowe v. Scott,* 48 F.3d 873, 875 (5th Cir.1995).

Respondent argues that Petitioner's two trial court error claims are procedurally barred because he raised them for the first time in his state application for writ of habeas corpus. Petitioner failed to present those claims to the intermediate appellate court or to the Texas Court of Criminal Appeals in a petition for discretionary review. If a state court has declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, the procedural bar applies. *See Coleman v. Thompson,* 501 U.S. 722, 729-31 (1991).

The record reflects that on habeas corpus review, the trial court found that Petitioner's claim of trial court error was "not cognizable on a writ of habeas corpus." *Ex parte Bell* at 101 (Finding of Fact No. 4). Accordingly, the Texas Court of Criminal Appeals has not reviewed the claims. They cannot be reviewed by a state court because Petitioner did not raise them on appeal or in his petition for discretionary review.

To overcome the procedural bar, a petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice. *Coleman*,

**Findings, Conclusions, and Recommendation
of the United States Magistrate Judge -Page 12**

501 U.S. at 729-31. Petitioner has not shown a sufficient cause for his failure to present his trial court error claims on appeal. Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice. This exception is confined to cases where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999). To establish the required probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). Petitioner has not presented any new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted him. As the Court has found with respect to Petitioner's actual innocence claim, the post-trial affidavit of the trial witness Alexander is inherently suspect. On habeas corpus review, the trial court found that the affidavit of the prosecutor, Bill Wirskye was worthy of belief and on that basis denied Petitioner's claim of actual innocence and prosecutorial misconduct. Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas corpus consideration of Petitioner's trial court error claims.

**5.     Ineffective Assistance of Appellate Counsel**

Petitioner argues that his appellate counsel was ineffective for failing to file a motion for a new trial and failing to raise and brief the issue of prosecutorial misconduct.

Petitioner has to prove that his appellate counsel was deficient and that the deficiency prejudiced his case. *Strickland*, 466 U.S. at 687. In fact, Petitioner's claim that appellate counsel did not file a motion for a new trial is a misrepresentation because counsel did file such a

**Findings, Conclusions, and Recommendation
of the United States Magistrate Judge -Page 13**

motion. Tr. 66 (Defendant's Motion for New Trial). Appellate counsel's failure to raise certain issues on appeal does not deprive an appellant of effective assistance of counsel when the petitioner does not show the existence of any trial errors with even arguable merit. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973). Petitioner has not shown any failure of appellate counsel that would have prejudiced his case; therefore, this claim is without merit.

**6.    Factual Insufficiency of the Evidence**

Petitioner contends that the evidence is factually insufficient to prove that Petitioner committed the offense. Under Texas law, appellate courts conduct a "factual sufficiency" review of the evidence. *See Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). Petitioner alleges that the review for factual sufficiency claims requires the appellate tribunal to view all the evidence without the prism of "in the light most favorable to the prosecution," and to set aside the verdict if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W. 2d at 133. However, in challenges to state convictions under 28 U.S.C. § 2254, only the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), need be satisfied, even if state law would impose a more demanding standard of proof. *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990). Petitioner's factual sufficiency of the evidence claim does not raise a claim that is cognizable on federal habeas corpus review and should be dismissed.

**VII.    RECOMMENDATION**

**Findings, Conclusions, and Recommendation
of the United States Magistrate Judge -Page 14**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied with prejudice for Petitioner's failure to make a substantial showing of the denial of a federal right.

Signed March 9, 2005.

                                                PAUL D. STICKNEY
                                                UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, (1985).

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions, and Recommendation**
**of the United States Magistrate Judge -Page 16**